UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

SHAWN MOONEYHAN, )
)
Petitioner, )
) Case No. 4:04-cv-107
) (1:03-cr-7)
v. ) *Edgar*
)
UNITED STATES OF AMERICA, )
)
Respondent. )

**MEMORANDUM**

Petitioner Shawn Mooneyhan has filed a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. [Court Doc. No. 1]. The Government opposes Mooneyhan's motion. [Court Doc. No. 9]. As stated *infra*, this court has concluded that a hearing is not necessary and that Mooneyhan's Section 2255 motion is without merit and will be **DENIED**.

  I.  **Procedural History and Background Facts**

On May 14, 2003, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a second superseding indictment against Mooneyhan charging him with one count of conspiring to violate 21 U.S.C. § 841(a)(1) and (b)(1)(A) and distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. § 846. The indictment alleged that seven other defendants conspired with Mooneyhan. [Court Doc. No. 74].

On August 4, 2003 Mooneyhan pled guilty pursuant to a plea agreement signed with the government. [Court Doc. No. 118]. The plea agreement provided that Mooneyhan agreed "to plead guilty to Count One of the Second Superseding Indictment returned in this District charging him with a violation of Title 21, United States Code, Section 846, that is, conspiracy to

commit violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), *i.e.*, to distribute 500 grams or more of cocaine hydrochloride (powder), a Schedule II controlled substance." *Id.* The plea agreement provided that the parties agreed to the following description of the factual circumstances of the crimes Mooneyhan committed:

> . . . defendant conspired with others in Bedford County to distribute more than 500 grams of cocaine. For example, in June 2002, Agapito Fernandez distributed at least four kilograms of cocaine to Matthew Kelly. Kelly in turn gave it to defendants Seibers and Habel to weigh, repack, and hide. After Kelly was removed from the conspiracy, Seibers, Habel, Mooneyhan, and others hid the cocaine, later retrieved the cocaine, and eventually a portion of the cocaine was returned to Fernandez. Before Seibers arranged to have a portion of the cocaine returned to Fernandez, Fernandez came to a residence in Bedford County where Seibers was located to discuss with Seibers the return of the cocaine. Seibers displayed a firearm during this discussion. In general, Fernandez distributed more than five kilograms of cocaine to Kelly, which in turn Kelly gave to Seibers and Habel to handle. Before Fernandez became the source for cocaine, Chris Lamb individually supplied Seibers and Kelly (over time) with kilograms of cocaine.

[Court Doc. No. 118, ¶ 11].

The plea agreement also provided that:

> [t]he defendant expressly waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect his case. Thus, the defendant knowingly, intentionally, and voluntarily waives his right to collaterally attack the plea being offered in the instant case. The defendant further acknowledges that a breach of this clause of the plea agreement (like the defendant's breach of any other clause of the plea agreement) would leave the United States free to withdraw from the plea agreement.

[Court Doc. No. 118, ¶ 8].

During the rearraignment proceedings on August 4, 2003, this court asked Mooneyhan whether he understood the charges against him in the second superseding indictment. The court did acknowledge that Mooneyhan was pleading guilty to the lesser amount of 500 grams or more

of cocaine, instead of the five kilograms or more stated in the second superseding indictment.
Rearraignment Proceedings, Aug. 4, 2003, Vol. I, p. 1. The colloquy between the court and
Mooneyhan with respect to this charge was as follows:

> The Court: All right. Each of you here is charged with a conspiracy. And it's very important that you understand what a conspiracy is. Of course, if the government were to have to prove its case at trial, they'd have to prove that you all were in this conspiracy. And they'd have to prove that in effect that each of you was a part of a criminal partnership at work, if you will.
> It is necessary for the government to prove, first of all, that two or more people conspired or agreed to in this case distribute cocaine hydrochloride. The government doesn't have to show that there was any kind of formal agreement, but the government would have to show that there was at least a mutual understanding between two or more people to do this.
> Secondly, the government would have to show that you were intentionally involved as a member of this conspiracy, that you joined this conspiracy. That it was not an accident or mistake on your part, that you knew what you were doing. You knew what the object of the conspiracy was, that is to distribute cocaine. And you knew that it was a violation of law.
> And then, finally, in this particular case with you gentlemen, the government would have to show that the quantity involved here was at least 500 grams of cocaine hydrochloride.
> Do you think you understand what you're charged with, Mr. Mooneyhan?
> Defendant Mooneyhan: Yes, sir.
> The Court: And knowing what that is, do you still want to plead guilty?
> Defendant Mooneyhan: Yes, sir.

Rearraignment Proceedings, Aug. 4, 2003, Vol. I, pp. 12-13.

The prosecutor then reviewed the possible sentences as follows: "[w]ith respect to each defendant, a minimum sentence of five years imprisonment, a maximum of 40 years, a fine of up to two million dollars, at least four years of supervised release up to life, and $100 special assessment." Rearraignment Proceedings, Aug. 4, 2003, Vol. I, p. 14. When the court asked Mooneyhan if he still wished to plead guilty following his understanding of the possible sentences, Mooneyhan responded that he did. *Id.*

In summarizing the facts of the charges against Mooneyhan, the prosecutor stated:

> If this case had gone to trial, the facts would have been that co-defendants Fernandez and Habel will testify on June 5th of 2002 Matthew Kelley acquired four kilograms of cocaine from Fernandez. They took it to Mr. Habel's residence. Mr. Habel would testify that Mr. Mooneyhan and Haithcote were both there when the cocaine was weighed, repackaged, and hidden. . . . Also, on March 4, 2003, Mr. Mooneyhan waived his rights and did admit that he was present when Kelley brought the cocaine to Habel's residence and admitted that he and Seibers did remove and hide the cocaine . . .

Rearraignment Proceedings, Aug. 4, 2003, Vol. I, p. 18. Mr. Mooneyhan confirmed to the court that the prosecutor's version of the facts was true. *Id.* at p. 19. He also admitted that he was guilty. *Id.*

The Presentence Report (PSR) indicates that the government was willing to provide Mr. Mooneyhan with a reduction in his offense level for his acceptance of responsibility. The PSR states, "[a]t the time of his guilty plea, the defendant indicated that he substantially agreed with the factual basis presented by the government. Due to the defendant's agreement with the factual basis and his timely plea of guilty to the instant offense, it appears he is entitled to a reduction in his offense level based on acceptance of responsibility." Presentence Report, pp. 5-6. The PSR calculated Mooneyhan's base offense level at 30 based on the quantity of four kilograms of cocaine. *See* United States Sentencing Guidelines § 2D1.1(c)(5) (1992). The PSR then indicated a 3-point reduction in offense level for Mooneyhan's acceptance of responsibility, as well as another 2-point reduction in sentence pursuant to the "safety valve" provision found in United States Sentencing Guidelines §§ 5C1.2 and 2D1.1(b)(6). One of the elements of the safety valve was that the defendant need to have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . ." United States Sentencing Guidelines § 5C1.2(a)(5) (1992). Based on these reductions, the PSR calculated Mooneyhan's

offense level at 25 with a criminal history category of I. Because of the application of the safety valve, Mooneyhan was not subject to the 5-year minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(B). The PSR found his guideline sentence range to be 57 to 71 months. Presentence Report, p. 10.

Mooneyhan's counsel initially objected to the base offense level calculation. He filed an objection to the PSR stating in part, "The plea agreement signed by both the Defendant and the United States indicates a plea to Conspiracy to Distribute 500 grams of Cocaine. The base offense level, pursuant to USSG § 2d1.1(c)(7), is therefore 26. The offense charged in the indictment would have indicated a base offense level of 30; however, the Defendant entered a plea to the lesser charge. Setting the base offense level at the higher/indicted amount denies the Defendant of the benefit of the plea bargain." Position of the Defendant with Respect to the Presentence Investigation Report, p. 2, ¶ 7. However, by the time of the sentencing hearing on November 17, 2003, Mooneyhan's counsel admitted that the objection regarding the base offense level was "an incorrect adjustment on my part." [Court Doc. No. 209, Judgment Proceedings Vol. I, p. 2]. He then "conceded" that the base offense level of 30 was correct. *Id.* at 3.

The court then agreed with the PSR's suggested guideline range of 57 to 71 months based on a drug quantity of four kilograms of cocaine and an offense level of 25. It then imposed the lowest possible sentence within that range at 57 months. [Court Doc. No. 209, Judgment Proceedings Vol. I, p. 10]. At the end of the sentencing hearing the court told Mooneyhan, "[y]ou do have a right to appeal your sentence. If you want to appeal it, discuss that with your attorney, and a notice of appeal will have to be filed within 10 days to perfect that." Judgment

Proceedings, November 17, 2003, p. 11.

Mr. Mooneyhan claims in his Section 2255 motion that his counsel did not consult with him regarding his right to appeal and its potential for success. [Court Doc. No. 1]. Mr. Mooneyhan's counsel has a different recollection of his conversations with his client. His affidavit states in relevant part:

> [t]o the best of my recollection, Mr. Mooneyhan never asked about an appeal. The issue of appeal was only very briefly discussed just prior to the sentencing hearing, in which I expressed doubt that if he was sentenced at a base offense level of 30, rather than at 26, that I did not feel that an appeal would be successful. This conversation lasted only a few seconds, and occurred just moments before sentencing.

[Court Doc. No. 9-2, Affidavit of Michael A. Colavecchio, ¶ 3].

Mooneyhan timely filed his Section 2255 motion. In his motion he raises three arguments. He claims: (1) that his counsel was ineffective due to his counsel's failure to discuss the potential merits of a direct appeal; (2) that he was denied his Sixth Amendment right to a jury when the court enhanced his sentence based on facts not determined by a jury or admitted to by Mooneyhan ; and (3) the court did not have jurisdiction to impose a 57-month sentence.

## II.    Standard of Review

28 U.S.C. § 2255 states in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *see also, Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). As the Sixth Circuit has held, "[i]n order to prevail upon a section 2255 motion, the petitioners 'must

allege one of three bases: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Moss*, 323 F.3d at 454 (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Petitioner Mooneyhan did not file a direct appeal of his sentence, and he is now seeking collateral review for what he claims to have been ineffective assistance of counsel, violation of his Sixth Amendment right to a jury trial, and a lack of jurisdiction. The Sixth Circuit has held that "[o]n collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.' It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Frady*, 456 U.S. 152, 166 (1982)). Petitioners must "show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair*, 157 F.3d at 430 (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

Further,

> [w]hen a section 2255 petitioner has procedurally defaulted his contentions by failing to assert them on direct appeal or via a previously litigated habeas application, he must further either prove (1) that he possessed good cause for failing to do so and would suffer actual prejudice if his averments are deemed precluded, or (2) that he is actually innocent of the subject offense.

*Fair*, 157 F.3d at 430 (citing *Bouseley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998) (other citations omitted)).

**III. Analysis**

Criminal defendants are entitled to the assistance of counsel for their defense pursuant to the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI; *see also*, *Moss*, 323 F.3d at 454. A right that is derivative of the right to counsel is the right to have effective assistance of counsel. *Moss*, 323 F.3d at 454; *see also, Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The "benchmark of effectiveness 'must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000) (quoting *Strickland*, 466 U.S. at 686).

In *Hofbauer* the Sixth Circuit explained the two-part test for ineffective assistance of counsel as described in *Strickland*:

> First a defendant must show that counsel's performance was 'deficient,' involving 'errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' . . . . Second, even if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. To make this showing, the defendant must demonstrate that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Hofbauer*, 228 F.3d at 702 (quotations omitted).

Mooneyhan first alleges that his counsel failed to render effective assistance by failing to discuss with him the merits of filing a direct appeal. Within the context of a guilty plea, the Sixth Circuit has recently noted:

> In order to show that deficient performance prejudiced the defense when a defendant pleads guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." A defendant can meet this burden by showing, for example, that there was an "affirmative defense," such as an insanity defense, that "likely would have succeeded at trial," or by showing that he or she was not competent to plead guilty. A defendant is competent if he or she "has

-8-

sufficient present ability to consult with his lawyer with a reasonable degree of
rational understanding" and "has a rational as well as factual understanding of the
proceedings against him."

*Stewart v. Morgan*, 2007 WL 1451974 *4 (6th Cir. 2007)(quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Dusky v. United States*, 362 U.S. 402, 402 (1960) and citing *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001); *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996)).

In this action Mooneyhan claims his counsel did not discuss his direct appeal rights with him. He further asserts that he would have wanted to file a direct appeal if he had known he could do so. In *Roe v. Flores-Ortega*, the U.S. Supreme Court reiterated that:

> [w]e have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.

528 U.S. 470, 477, 120 S.Ct. 1029, 1035 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. (1969) (other citations omitted)). In *Flores-Ortega* the Supreme Court held that:

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

528 U.S. at 480, 120 S.Ct. at 1036. To demonstrate a showing of prejudice from a failure to file an appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S.Ct. at 1038.

In addition, a court's "proper plea colloquy will cure any misunderstandings that a petitioner may have had about the consequences of the plea." *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999); *see also, Hastings v. Yukins*, 194 F.Supp.2d 659, 669 (E.D. Mich. 2002). Other district courts in this Circuit have noted that "habeas relief should not be granted by crediting a petitioner's subjective version of her understanding of the plea bargain." *Hastings*, 194 F.Supp.2d at 670.

Mr. Mooneyhan and his counsel's version of their discussions regarding his right to file a direct appeal differ. However, their differing versions of the events are not material because Mr. Mooneyhan's counsel did not have a duty to discuss Mooneyhan's right to a direct appeal unless a rational defendant would want to appeal or Mr. Mooneyhan expressed a desire to appeal. *See Flores-Ortega*, 528 U.S. at 480, 120 S.Ct. at 1036. Neither Mr. Mooneyhan nor his counsel suggest that Mr. Mooneyhan expressed an interest in appealing. Moreover, this court clearly explained to Mr. Mooneyhan that he had a right to appeal his sentence during the sentencing hearing. Judgment Proceedings, November 17, 2003, p. 11. However, there is no evidence in the record suggesting that Mr. Mooneyhan asked his counsel about an appeal.

Mr. Mooneyhan argues that his counsel objected to the sentencing based on the four kilograms of cocaine during the sentencing hearing. However, he ignores the fact that his counsel informed this court that he was wrong about his objection based on the drug quantity. *See* Judgment Proceedings, Vol. I, p. 2.

Further, Mooneyhan contends that he only admitted to participating in a conspiracy to distribute 500 grams of cocaine. However, the plea agreement stipulates certain facts upon which the parties agree. Plea Agreement, ¶ 11. The parties agreed that "in June 2002, Agapito

Fernandez distributed at least four kilograms of cocaine to Matthew Kelly. Kelly in turn gave it to defendants Seibers and Habel to weigh, repack, and hide. After Kelly was removed from the conspiracy, Seibers, Habel, Mooneyhan, and others hid the cocaine, later retrieved the cocaine, and eventually a portion of the cocaine was returned to Fernandez." *Id.* The plea agreement also states that "[b]ased upon the evidence presently available to the parties, the parties view this case as one in which the defendant has accepted responsibility for his involvement in this offense." *Id.* at ¶ 5a. In addition, during the rearraignment hearing Mr. Mooneyhan admitted the facts involving hiding the four kilograms of cocaine. *See* Rearraignment Proceedings, Aug. 4, 2003, Vol. I, pp. 18-19.

Based on Mr. Mooneyhan's admissions in his plea agreement, as well as his admissions of guilt relating to the four kilograms of cocaine on the record during the rearraignment hearing, it is clear that Mr. Mooneyhan did not have a non-frivolous argument regarding being sentenced based on the four kilogram amount of cocaine. As the Sixth Circuit has explained, a defendant's "statements to the court carry a strong presumption of truthfulness." *United States v. Rennick*, 219 F. App'x. 486, 489 (6th Cir. 2007) (citing *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621 (1977)). In *Rennick*, the Sixth Circuit found that the defendant's confirmation of the government's version of the facts during the plea hearing gave the district court "a sufficient factual basis for entering the plea." *Id.*

Mr. Mooneyhan's counsel properly assessed the merit of his possible direct appeal and determined that Mr. Mooneyhan did not have a non-frivolous basis for appeal. Further, Mr. Mooneyhan was not prejudiced by this court's application of the four kilogram quantity of cocaine because the court also reduced the offense level by five points – three for acceptance of

responsibility and two for the safety valve – that both related to Mr. Mooneyhan's truthfulness regarding the nature of the offense. Had the court considered only the 500 grams of cocaine, his base offense level would have been 26. United States Sentencing Guidelines § 2D1.1 (1992). However, he would not have been entitled to the five-point reduction in offense level for acceptance of responsibility or for providing truthful information. Therefore, his sentence guideline range would have been 63 to 78 months, a higher sentence than the 57-month sentence he received. *See* Sentencing Table, United States Sentencing Guidelines Ch. 5 Pt. A. (1992). Therefore, Mr. Mooneyhan's counsel rightfully concluded that his likelihood of success on appeal was slim and that he was not prejudiced by the offense level of 30 with a three-point reduction for acceptance of responsibility and a two-point reduction pursuant to the "safety valve" rather than an offense level of 26 with no offense level reduction. Mr. Mooneyhan's claim regarding ineffective assistance of counsel must, therefore, fail.

Mooneyhan next alleges that his Sixth Amendment right to a jury trial was violated due to this court's imposition of a sentence based on a larger quantity of drugs than he allegedly admitted to in his plea agreement. Mooneyhan relies on *Apprendi v. New Jersey*. 530 U.S. 466, 120 S.Ct. 2348 (2000). In *Apprendi* the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Petitioner further argues that *United States v. Booker*, 543 U.S.220 (2005) and *Blakely v. Washington*, 542 U.S. 296 (2004), both pending at the time of his collateral appeal, also apply to his claims. In *Blakely* the Supreme Court held that the defendant's sentence violated the defendant's Sixth Amendment right to a jury trial where the court sentenced him to prison for

more than three years beyond the maximum sentence for the crime to which he confessed based on a disputed issue of fact. 542 U.S. at 313-314. In *Booker* the Supreme Court reaffirmed its holding in *Apprendi* and invalidated provisions of the Sentencing Reform Act that made the United States Sentencing Guidelines mandatory, instead making the Guidelines advisory. 543 U.S. at 244-245. The Sixth Circuit has since clarified that *Blakely* claims are now *Booker* claims and *Booker* claims do "not apply retroactively to cases already final on direct review." *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005). Thus, *Booker* does not apply to Mooneyhan's Section 2255 motion.

However, even if *Booker* and *Blakely* applied to Mooneyhan's claims, they would still be without merit because Mooneyhan's contentions are not supported by the facts as evidenced in the record. Mooneyhan asserts that the court adopted the base offense level of 30 outlined in the PSR, which was based on a drug quantity of four kilograms of cocaine, rather than the 500 grams to which he admitted in his plea agreement. Mooneyhan contends that the court's alleged use of a base offense level of 30 violated *Apprendi* and *Booker* because the offense level was based on a larger quantity of drugs than the amount Mooneyhan admitted to in his plea agreement. As discussed *supra*, in the plea agreement the parties agreed that Mooneyhan hid four kilograms of cocaine. Plea Agreement, ¶ 11. Further, Mooneyhan admitted to assisting in hiding four kilograms of cocaine during the rearraignment hearing. Thus, Mooneyhan admitted to the conspiracy to distribute four kilograms of cocaine, and he received a three-point offense level reduction for taking responsibility for his actions, as well as a two-point reduction pursuant to the "safety valve." Thus, Mooneyhan was not sentenced based on an inflated quantity of cocaine. A sentence authorized solely on the basis of the drug quantity Mooneyhan admitted

does not violate his constitutional rights. *See Rennick*, 219 F. App'x. at 490 (citing *United States v. Murdock*, 398 F.3d 491, 501-02 (6th Cir. 2005)); *see also, United States v. Stafford*, 258 F.3d 465, 478 (6th Cir. 2001). Therefore, no *Booker* violation exists.

Mr. Mooneyhan's third and final argument is that this court was without jurisdiction to sentence him to 57-months imprisonment. His argument is again based on *Booker*, which was pending at the time Mr. Mooneyhan filed his Section 2255 motion. As stated *supra*, *Booker* claims do "not apply retroactively to cases already final on direct review." *Humphress*, 398 F.3d at 857. Further, this court had jurisdiction to sentence Mr. Mooneyhan at the low end of the guideline range for an offense level of 25 based on his admission to his involvement with the conspiracy to distribute four kilograms of cocaine both in the plea agreement itself and during the rearraignment proceeding. *See, Stafford*, 258 F.3d at 478. Therefore, Mr. Mooneyhan's third claim of error is without merit.

### III.     Conclusion

In accordance with the analysis *supra*, Mooneyhan's 28 U.S.C. § 2255 motion will be **DENIED**.

A separate order will enter.

                                         */s/ R. Allan Edgar*
                                         R. ALLAN EDGAR
                               UNITED STATES DISTRICT JUDGE